886 F.2d 1338
 281 U.S.App.D.C. 38, Energy Mgt. P 26,628
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
INDEPENDENT PETROLEUM ASSOCIATION OF AMERICA, Petitioner,
v.
ECONOMIC REGULATORY ADMINISTRATION, Respondent,
ANR Pipeline Company, Minnegasco, Inc., Western Gas
Marketing Limited, Intervenors-Respondents.
 No. 88-1298.
 United States Court of Appeals, District of Columbia Circuit.
 Oct. 12, 1989.
 
 Before WALD, Chief Judge, and SILBERMAN and SENTELLE, Circuit Judges.
 
 JUDGMENT
 
 1
 This cause came on to be heard on the petition for review of orders of the Economic Regulatory Administration, and was briefed and argued by counsel. The court has determined that the issues presented occasion no need for a published opinion. See D.C.Cir.Rule 14(c). For the reasons set forth in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED by the court that the petition for review of the Economic Regulatory Administration's Order No. 191 of September, 21, 1987 and Order No. 191-A of November 20, 1987 be denied.
 
 
 3
 It is ORDERED, sua sponte, that the Clerk shall withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.R. 15 (August 1, 1987). This instruction to the Clerk is without prejudice to the right of any party at any time to move for expedited issuance of the mandate for good cause shown.
 
 MEMORANDUM
 
 4
 In its Orders Nos. 191 and 191-A, the Economic Regulatory Administration ("ERA" or "the Administration") authorized Minnegasco, Inc. ("Minnegasco"), a local distribution company, to import from TransCanada Pipelines, Ltd. ("TransCanada"), a Canadian supplier, 50,000 Mcf of natural gas per day on a firm basis, and up to 110,000 additional Mcf per day on an interruptible basis. Pursuant to the Minnegasco-TransCanada contract, the gas is shipped by TransCanada to the United States border, transported by Midwestern Gas Transportation Company to Cambridge, Minnesota, and then delivered to Minnegasco's facilities through a new 32-mile long intrastate connector. This arrangement gave Minnegasco an alternative supplier to Northern Natural Gas Company ("Northern").
 
 
 5
 Under the contract, the commodity rate for TransCanada gas is set at a level seven percent below the Northern commodity rate for equivalent firm service in the Minneapolis, Minnesota area. TransCanada's demand charge is set by a formula so that the sum of TransCanada's and Midwestern's combined demand charges is less than Northern's comparable demand charge.
 
 
 6
 This Court finds no merit in the Independent Petroleum Association of America's ("IPAA") various challenges to the Administration's orders.
 
 
 7
 First, IPAA complains that ERA improperly relied on the 1984 DOE Natural Gas Policy Guidelines. In fact, ERA applied the Guidelines as rebuttable presumptions, an application previously approved by us in Panhandle Producers & Royalty Owners Ass'n v. ERA, 822 F.2d 1105 (D.C.Cir.1987). Next, IPAA complains that ERA's finding that the import arrangement is in the public interest is not supported by substantial evidence, specifically directing this challenge to the elements of need and competitiveness. In fact, ERA expressly based its findings on evidence that the contract contained no take-or-pay clauses or other anticompetitive terms, and did provide for renegotiation of the commodity rate at any time and annual renegotiation of contract pricing terms, as well as contract arbitration.[1] We recently upheld ERA's conclusion that such a contract provided adequate assurance of competitiveness, and its reliance on the 1984 Guidelines to support a finding of need in New England Fuel Institute v. ERA (NEFI), 875 F.2d 882 (D.C.Cir.1989). The contract in the present case, in fact, goes further to assure market responsiveness by tying the price of gas to prevailing market prices.
 
 
 8
 IPAA also asserts several specific objections to the import arrangement. We have examined all carefully but find that none merit separate discussion and that all are without merit.
 
 
 9
 We likewise reject IPAA's procedural challenge to the Administration's Orders. ERA did not abuse its discretion in declining to hold a trial-type hearing since IPAA failed to raise any genuinely disputed issue of material fact. As we noted in NEFI, 875 F.2d at 882, the governing statute, 15 U.S.C. Sec. 717(b) and ERA's implementing regulations require a trial-type hearing only when ERA "determines that there is a relevant and material factual issue genuinely in dispute and that a trial-type hearing is necessary for a full and true disclosure of the facts." 10 C.F.R. Sec. 590.313(a) (1988). Here, as in NEFI, 875 F.2d at 882, Panhandle (D.C.Cir.), 822 F.2d at 1105, and Panhandle Producers & Royalty Owners Ass'n v. ERA, 847 F.2d 1168 (5th Cir.1988), the issues raised are largely questions of policy or matters that are irrelevant to ERA's public interest assessment. Therefore, IPAA, like the Petitioners in those cases, is not entitled to a trial-type hearing.
 
 
 10
 Further, the Administration did not err by denying IPAA's discovery request. IPAA sought to discover the connector contract, but it had failed to take advantage of its opportunity to discover the same document in the proceeding before the Minnesota Public Utilities Commission, and also failed to show that there was relevant, unavailable information that would be uncovered by discovery.
 
 
 11
 Finally, Petitioner alleged that the Administration relied on extra-record information cited in its Order No. 191-A, but has made no showing that the Administration in fact did rely on such information or that Petitioner was substantially prejudiced by the non-reliant references contained in the Order.
 
 
 12
 In short, we have no reason to disturb the conclusion of the Administration, and therefore deny the petition for review.
 
 
 
 [1]
 A challenge by IPAA to the Administration's finding that no anticompetitive demand or minimum commodity charges applied to the arrangement is without merit. The Federal Energy Regulatory Commission recently disallowed Midwestern's minimum commodity charge, Midwestern Gas Transmission Co., 43 FERC p 61,065 at 61,178 (1988). The Minnesota Public Utilities Commission found that no demand or minimum commodity charges applied to the connector. Order Asserting Jurisdiction and Approving Contract, Minnesota Public Utilities Commission, issued June 19, 1987